[No. 7587–7–III.   Division Three.   January 14, 1988.]

CONTROLLED ATMOSPHERE, INC., ET AL, *Appellants*, v. BRANOM INSTRUMENT CO., *Respondent*.

*Michael Geraghty* and *Turner, Stoeve, Gagliardi & Goss,* for appellants.

*Robert Hailey* and *Randall & Danskin,* for respondent.

McINTURFF, C.J.—Branom Instrument Co. was granted summary judgment on all the plaintiffs' claims. We affirm in part and reverse in part.

On December 6, 1980 fire destroyed a cold storage warehouse owned by Methow–Pateros Growers, Inc. Methow–Pateros sued Controlled Atmosphere, Inc. (a subsidiary of Crowder Refrigeration, Inc., subsequently merged into Crowder Refrigeration, Inc.) and Crowder Refrigeration, Inc., alleging the fire was caused by failure of a MSA–10 $CO_2$ scrubber designed and installed by Crowder.

The MSA–10 $CO_2$ scrubber sold by Crowder to Methow–Pateros in 1976 was used to control the atmosphere in

apple storage rooms thereby controlling the condition and maturity of the apples and lengthening the time the fruit could be held before sale. Among other alleged defects, Methow–Pateros alleged an electric timer failed causing the scrubber to malfunction and overheat which in turn caused the fire. Branom Instrument Co. supplied the timer used by Crowder in the MSA–10 $CO_2$ scrubber. The cost of the timer was $26.35. The cost of the scrubber sold by Crowder was $16,200, excluding labor and material to install it. The timer supplied was an Eagle Signal timer, TM series, manufactured by Eagle Signal Division of Gulf & Western.

Crowder settled the suit with Methow–Pateros for $1,800,000. On January 28, 1983 Crowder filed its complaint for indemnity and contribution against Branom, alleging Branom was liable for contribution on the basis of (1) breach of warranties to Crowder, (2) negligence in its representations to Crowder and in the design, testing and sale of the timing device, (3) failure to warn, and (4) strict liability in tort, and that Branom's conduct was a proximate cause of the damages Crowder paid to Methow–Pateros. Branom brought a third party suit against Gulf & Western which the parties stipulated could not be prosecuted pending the outcome of this appeal.

James Erskine, part owner of Controlled Atmosphere, Inc., was one of the persons responsible for selecting the timer to be used in the scrubber constructed by Crowder. In his deposition, Mr. Erskine stated he dealt with Mr. Bergstrom, a salesman for Branom, who recommended the timer to meet Crowder's desire for a timer that could be adjusted without use of spanner wrenches and which did not require machining of cams to install. Mr. Bergstrom viewed Crowder's manufacturing facility but was not an electrical engineer and Crowder had no reason to believe he was an engineer. Mr. Bergstrom made no representations about the expected useful life of the timer. Further, Crowder ran its own tests on the timer both before and after installation and Mr. Erskine stated he thought the timer should be replaced only when it failed and should be used

until that time. Mr. Erskine was aware that other timers of this type had stalled while in operation, sometimes from motor failure, but in other instances the cause was unknown. Crowder returned some failed timers to Branom which replaced them. He said he firmly believed the timer in the instant scrubber failed and it caused the fire; however, to the question "Is there any evidence that the timer was defective?", he answered "No". Mr. Erskine was asked what he meant by "No". He answered: I meant that when I saw the melted timer, I was not able to determine if it failed from a motor or from friction or if a cam tab fell off or whatever." Additionally, the scrubber had been repaired the day before the fire and the cover to the timer had been left off. Mr. Erskine said debris could stall the timer and there was no way to prove debris did not stall the timer.

Subsequent to his deposition, Mr. Erskine was part of a team sent to investigate the fire. He submitted an affidavit based on his investigation in which he stated he believed that even though the motor cover had been removed from the timer there most probably would not have been debris in the control cabinet which would have caused the timer to fail. He also stated it was his opinion the timer failed because of a defective spider clutch which was a manufacturing defect and that the probable clutch failure occurred well before the reasonably anticipated useful life for this particular timer. The only issue is whether the trial court erred in granting Branom's motion for summary judgment.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The burden is on the moving party to demonstrate that there is no genuine issue of material fact; all reasonable inferences from the evidence are to be resolved against the moving party. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349, 588 P.2d 1346 (1979).

In analyzing this question, four questions arise. (1) What is the appropriate statute of limitation for a breach of warranty action? (2) Assuming the statute of limitation for breach of warranty has not run, is there a material issue of fact on the breach of warranty claim? (3) Is there a material issue of fact on the negligence claim? (4) Is there a material issue of fact on the strict liability claim?

### BREACH OF WARRANTY

Crowder claims RCW 4.22.050 is the applicable statute of limitation. It reads in part:

> If no judgment has been rendered, the person bringing the action for contribution either must have (a) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against him and commenced the action for contribution within one year after payment, or (b) agreed while the action was pending to discharge the *common liability* and, within one year after the agreement, have paid the liability and commenced an action for contribution.

(Italics ours.) Under RCW 4.22.040(1):

> A right of contribution exists between or among two or more persons who are *jointly and severally liable* upon the *same indivisible claim* for the same injury . . . whether or not judgment has been recovered against all or any of them. . . . The basis for contribution among liable persons is the comparative fault of each such person.

(Italics ours.) RCW 4.22.015 defines "fault" to include warranty. "[I]f more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several." RCW 4.22.030. *Smith v. Jackson,* 106 Wn.2d 298, 304, 721 P.2d 508 (1986) held a defendant's right to recover contribution from a third party tortfeasor under RCW 4.22 is not affected by the expiration of the statutory limitation period which would bar the plaintiff from recovering from the third party.

On the other hand, Branom claims RCW 62A.2–725, the statute of limitation in contracts for sale, is the applicable statute of limitation. It provides, in part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extend[ing] to future performance of the goods . . .

(Italics ours.)

Central to determining the scope of the contribution statute is the language *"indivisible* claim for the *same* injury, death or harm, . . ."* (Italics ours.) RCW 4.22.030. This language defines the tortfeasors' liability as joint and several and thus defines who has a right to contribution under RCW 4.22.040. A right of contribution arises when a joint tortfeasor settles a case with an injured plaintiff and in the process extinguishes liabilities of other tortfeasors. *W.D. Rubright Co. v. International Harvester Co.,* 358 F. Supp. 1388, 1392 (W.D. Pa. 1973).

Here Branom and Crowder have no common liability for breach of warranty to Methow–Pateros which Crowder has satisfied on behalf of Branom. Rather, Crowder's action for breach of warranty by Branom to Crowder is the issue. To hold RCW 4.22.040 applicable to liability between tortfeasors as well as liability to the plaintiff would allow the party suing for contribution to keep alive claims against a joint tortfeasor that are unrelated to the subject of the injured plaintiff's action.

RCW 62A.2–725 is the appropriate statute of limitation. It has run and bars Crowder's breach of warranty claim against Branom because delivery of the timer was made in February 1976. This contribution action was commenced on January 28, 1983, more than 4 years from the date of delivery.

We hold the court properly dismissed the breach of warranty action as barred by the statute of limitation, RCW 62A.2–725. Therefore we need not address Crowder's claim that there are disputed material facts sufficient to preclude summary judgment on its claim of breach of the implied warranty of fitness for a particular purpose.

### NEGLIGENCE THEORY

The elements to be proven in a products liability case based on the alleged negligence of a seller of a product are:

> (a) the offer of sale of the product by a retailer, (b) a duty of care in the retailer, (c) a failure by act or omission to perform the duty, (d) an injury occurring from use of the product and (e) a proximate cause of the injury was a failure to perform the duty.

*Martin v. Schoonover,* 13 Wn. App. 48, 54, 533 P.2d 438 (1975).

Here, Branom argues it had no duty to inspect or test the timer. A seller of an item which was manufactured by a third party is not generally liable for harm caused by the dangerous character of the item if the seller did not know or had no reason to know the item was, or was likely to be, dangerous. *Zamora v. Mobil Oil Corp.,* 104 Wn.2d 199, 203, 704 P.2d 584 (1985) (citing as authority Restatement of Torts § 402 (Supp. 1948)). *See also Ringstad v. I. Magnin & Co.,* 39 Wn.2d 923, 239 P.2d 848 (1952).

Further, Branom argues had it tested the timer, there is no evidence in the record which indicates inspection would have uncovered a dangerous defect in the product. Therefore, failure to test the timer could not have been a proximate cause of Crowder's injury. The only evidence in the record supports the contrary, that testing by Controlled Atmosphere did not reveal a defect and the timer operated without a problem for several years before the fire.

Crowder counters that Branom's arguments fail to address the burden of proof issue—that Branom has the burden to demonstrate that there are no factual issues and that it is entitled to judgment as a matter of law and failing

this, summary judgment should not be granted, even if the nonmoving party did not submit any evidence. *Hostetler v. Ward,* 41 Wn. App. 343, 346–47, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986).

Branom argues that the party moving for summary judgment need not support its motion with affidavits or other similar materials *negating* the opponent's claim in order to prevail on summary judgment, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). *Celotex,* 106 S. Ct. at 2553, held:

> Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 106 S. Ct. at 2553. Here, Crowder has not alleged in its complaint or introduced evidence that Branom had knowledge or reason to know that the timer was defective or may be defective. Therefore, lack of knowledge is not a factual issue. Summary judgment for Branom was appropriate on the issue of negligent inspection and testing.

■ Crowder also argues Branom failed to warn Crowder of the defect in the timer. A duty to warn arises when a supplier knows or has reason to know the product is likely to be dangerous for the use for which it is supplied. *Zamora,* at 204; Restatement (Second) of Torts § 388(a) (1965). Again, Crowder has not alleged or offered any proof that Branom knew or had reason to know the timer was likely to be dangerous for use in the MSA–10 $CO_2$ scrubber. Summary judgment was appropriate on the issue of failure to warn.

■ Crowder also argues Branom made negligent misrepresentations in the sale of the timer. The elements of negligent misrepresentation are false statements, made to

induce a sale, which are relied on in fact and which justifiably may be relied on. *J. & J. Food Ctrs., Inc. v. Selig,* 76 Wn.2d 304, 311, 456 P.2d 691 (1969). It is undisputed that Branom made no explicit representations about the expected life of the timer. But more important, there is no evidence of justifiable reliance on any possible representations made by Branom. The only evidence is to the contrary: that Crowder tested the timer before and after installing it, knew identical timers failed occasionally, and stated it would not replace a timer unless it failed. Thus, there is no issue of fact on this claim, since reasonable persons could reach only one conclusion viewing the evidence most favorably to Crowder that there was no issue of fact regarding the element of justifiable reliance needed to make out a claim of negligent misrepresentation. Therefore, the court properly dismissed the negligent misrepresentation claim.

### STRICT LIABILITY

Strict liability extends to design and manufacturing defects and extends to those in the chain of distribution. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 148–49, 542 P.2d 774 (1975). Strict liability is imposed if a product is not reasonably safe which means it is unsafe beyond the extent reasonably contemplated by the ordinary consumer. Factors to consider to determine the reasonable expectations of the ordinary consumer include: the relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk. *Tabert,* at 154. *Tabert,* at 154, stated this was not an exclusive list of the factors to consider: "In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue."

Crowder argues Mr. Erskine's affidavit was sufficient to raise a material issue of fact for a strict liability claim, precluding dismissal on summary judgment. Branom argues the court could properly disregard Mr. Erskine's affidavit as

he was not qualified to testify as an expert and that the contents of the affidavit were conclusory at best. Finally, Branom argues mere failure of a product to operate does *not* make it *not* reasonably safe.

Mr. Erskine's affidavit is listed as a matter considered by the trial court. Therefore, contrary to Branom's assertion, the trial court did not disregard Mr. Erskine's affidavit. Again it is the court's task to determine whether the contents of the affidavit and any other evidence favorable to Crowder establish a material question of fact on the strict liability claim.

The substance of Mr. Erskine's affidavit is his opinion, based on personal investigation that the timer was defective, that a manufacturing defect in the plastic spider clutch used in the timer failed or broke before the reasonable anticipated useful life of the timer had passed, and that the timer was not reasonably safe. There are two ways to look at this affidavit. One approach is to consider the affidavit to be nonexpert testimony. Branom argues that as nonexpert testimony, the affidavit is merely conclusory and not sufficient to avoid summary judgment because Mr. Erskine's opinions are not supported by any evidence before the court. On the other hand, if the affidavit is expert testimony, Branom argues it is insufficient because the data underlying the opinions is not given. Branom argues that although ER 705 permits an expert to testify at trial without reference to underlying facts or data, allowing an expert to do so for purposes of summary judgment would make summary judgment impossible whenever a party has produced an expert. Although Mr. Erskine's qualifications as an expert are not abundantly documented in the record, his deposition indicates an engineering background which we find sufficient for purposes of summary judgment.

*Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 672–73 (D.C. Cir. 1977), cited by Branom, supports Branom's argument that ER 703 does not prevent a court from granting summary judgment when a party relies on an

expert's opinion that has no basis in the record. *Merit Motors, Inc.,* at 673 n.27, states: "The position that an expert's opinion that lacks any credible support creates an issue of 'fact' is clearly untenable." (Italics omitted.) *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 49 Wn. App. 130, 133, 741 P.2d 584 (1987), review pending, held an expert witness affidavit which states a conclusory opinion without setting forth the specific factual basis supporting the opinion was insufficient to satisfy the initial burden of a party seeking a summary judgment. The dissent in *Hash* disagreed, stating:

> [A]n expert may give an opinion by affidavit on summary judgment that is not based on personal knowledge and does not disclose the underlying data as long as some reasonable foundation is given for the opinion and the opinion is more than a bare conclusion the defendants were not negligent.

*Hash,* at 137. We found no Washington Supreme Court cases which have considered the issue.

In *Tabert,* at 155, plaintiff submitted an affidavit by an engineer who stated he specialized in auto crash studies in which he concluded the speed at the time of the crash was 20 m.p.h. and that the vehicle lacked structural strength. This was sufficient to avoid summary judgment on the strict liability claim. Likewise, Mr. Erskine's engineering experience and personal investigation of the cause of the accident is sufficient to support the opinions in his affidavit.

Even assuming this timer failed to operate due to a defective part, Branom argues failure of a product to operate does *not* make it *not* reasonably safe, thus the *Tabert* criteria should be applied to determine if a timer that does not work is unsafe to an extent beyond which would be reasonably contemplated by the ordinary consumer. Here, the first criteria, relative cost, would not be sufficient to lead an ordinary consumer to conclude the timer was unsafe since a product costing $26.35 was installed in a scrubber costing $16,200 exclusive of labor and material to install the scrubber.

On the second criteria, gravity of the potential harm from the claimed defect, Branom argues a component part cannot be considered defective merely because its useful life differs from the device it is a part of. *Abdul–Warith v. Arthur G. McKee & Co.*, 488 F. Supp. 306 (E.D. Pa. 1980), *aff'd*, 642 F.2d 440 (3d Cir. 1981).

In *Abdul–Warith*, 488 F. Supp. at 314, the court held summary judgment was proper in a products liability action to dismiss a strict liability claim against a defendant who designed and constructed a component part because a manufacturer has no obligation to supply a product with parts that will not wear out and failure to incorporate a backup safety device was not a design defect. In *Abdul–Warith* the part failed due to wear or deterioration. The plastic spider clutch in this case is also claimed to have broken, but Crowder argues that due to a defect the clutch broke before the reasonable useful life of the timer. The only evidence in the record on the reasonable useful life of the timer is the opinion of Mr. Erskine that it had a reasonable anticipated useful life of 10 years; the timer ceased to function in less than half this time. Thus, there is an issue of fact to resolve. Reverting to the language of the second criteria, gravity of the potential harm from the claimed defect, the possibility of fire and resulting loss of a warehouse is sufficiently grave in our view, but implicit in this conclusion is that the fire was caused by the timer's failure, also a factual issue to be determined by a jury.

The third criteria from *Tabert* is the cost and feasibility of eliminating or minimizing the risk. Branom argues the risk inherent in failure of the timer is the inconvenience and the cost of replacing the timer, not matters related to safety which would lead an ordinary consumer to conclude the timer was not reasonably safe. However, again this is a factual issue to be decided at trial. We conclude Mr. Erskine's affidavit was sufficient to raise a question of fact on whether the timer was not reasonably safe.

The judgment of the superior court granting summary judgment for Branom on the breach of warranty and negligence causes of action is affirmed. That portion of the judgment granting summary judgment for Branom on the strict liability cause of action is reversed; this case is remanded to the superior court for trial.

MUNSON and THOMPSON, JJ., concur.