[No. 13823-2-III.   Division Three.   April 11, 1996.]
CENTRAL WASHINGTON REFRIGERATION, INC., ET AL., *Appellants*, v. LES BARBEE D/B/A BARBEE ORCHARDS, *Defendant*, McCORMACK ENGINEERING, *Respondent*.

---

*James A. Perkins* and *Larson & Perkins*, for appellants.
*Michael H. Runyan, Charles C. Huber, Warren E. Babb, Jr.*, and *Lane Powell Spears Lubersky*, for respondent.

THOMPSON, J. — Central Washington Refrigeration, Inc. (Central) appeals the dismissal on summary judgment of its third party claim against McCormack Engineering (Mc-Cormack), manufacturer of a component of a fruit-storage refrigeration system that Central installed on Les Barbee's orchard. Central argues it should be permitted to hold McCormack responsible for damages resulting from defects in the system. We affirm.

Central installs controlled atmosphere (CA) refrigeration systems for fruit warehouses. In 1987, Central bid on a CA system for two new cold rooms at Barbee's Yakima County orchard. Central's bid included four McCormack refrigeration coils. David Martin, who handled sales of McCormack equipment, recommended the coils to Central. Barbee accepted Central's bid, and Central then placed an order, through Mr. Martin, for the McCormack coils. Central's order called specifically for equipment that would produce 29.7 tons of refrigeration and 60,000 cfm.

McCormack responded by sending to Central two technical drawings of the coils. McCormack alleges it also sent a sales contract or work order. The parties appear to agree the coils were shipped in August 1987, and Central completed the contract work on September 23, 1987.

Mr. Barbee refused to pay the amount due on Central's contract, apparently because of an ongoing dispute over Central's repairs to unrelated "Sullaire equipment." In February 1988, the parties and their representatives met to discuss payment for Central's work on the new cold rooms, as well as for the Sullaire repairs. During the meeting, Mr. Barbee did not allege the new CA units were defective and did not dispute the amount he owed Central on that contract. Mr. Barbee tentatively agreed on a pay-

ment schedule for the new CA units, as well as the Sullaire repairs. The parties executed an agreement on August 31, 1988, in which Mr. Barbee agreed to pay $21,187 immediately, leaving a balance of $34,138 to be paid at 11 percent interest from January 1, 1988. Mr. Barbee also executed a promissory note for $34,138 plus interest, to be paid on January 1, 1989. Payment for the Sullaire repairs was to be made in the ordinary course of business.

Central filed this lawsuit on September 29, 1988. Its complaint alleged that, while Mr. Barbee had made the initial payment of $21,187 and had made some payments on the remaining balance and for the Sullaire repairs, he had not made any payments since June 1988. The complaint alleged Mr. Barbee breached a repair contract and an oral contract to pay for the Sullaire repairs, and Mr. Barbee defrauded Central by agreeing to pay the amounts due, inducing Central to release a lien against Mr. Barbee's property. Central amended its complaint in February 1989, adding an allegation that Mr. Barbee had failed to pay on the promissory note.

In response to Central's motion for partial summary judgment, Mr. Barbee filed an affidavit on March 21, 1989. Mr. Barbee stated that, in February 1988 when he agreed to pay for the new CA units, he "had not had the opportunity to fully run and evaluate the entire system with the two new rooms added to it." He stated that he later learned the new CA units were defective, and the cost of correcting the defects would cost him more than he owed Central. Mr. Barbee answered Central's amended complaint and counterclaimed, alleging:

> 5. The system has been misdesigned and misinstalled by Central Washington Refrigeration and by its employees. The Sullair[e] compressors have been misdesignated and misinstalled and all repair work done thereunder has been improperly handled.

> 6. Central Washington Refrigeration has breached its duties of good faith in dealing with this contract, been

negligent in its installation and design of the systems, as well as the repair and installation of the systems, has breached its express warranties given with regard to the instruction and operation of the system, has breached its implied warranty of merchantability and the implied warranty of fitness for the purpose of cooling the apples. These transactions and goods have resulted in damages to the defendant.

Mr. Barbee retained Glenn Ward, a refrigeration expert, to evaluate his system. Mr. Ward concluded there were problems with "Central's design, installation, repair and maintenance at the Barbee facility with regard to the installation of the two CA rooms and the Sullaire compressors . . . ." Mr. Ward stated the problems with the new CA system included "the failure to use sufficient coils and fans in the system to allow proper cooling."

Central argues Mr. Ward's affidavit, dated October 17, 1989, was its first indication there was a problem with the McCormack coils. Central forwarded these allegations to Mr. Martin, who responded that Mr. Ward's allegations "lack[ed] substance." Mr. Martin's response to Central concluded: "I fail to see anything wrong with the selection or application of the unit coolers or the unit cooler fans that would affect 'pull down' or be detrimental to the fruit in the 'hold' condition."

Mr. Barbee filed for bankruptcy in February 1990, effectively halting prosecution of this case until March 1991. In January 1992, Central first learned that Mr. Barbee was claiming crop-loss damages resulting from the allegedly defective CA system. Mr. Barbee moved in March 1992 to amend his counterclaim to include damage to his 1989 apple crop. Mr. Barbee later amended the counterclaim to include as elements of damages "loss of and/or damage to stored apples, lost profits, loss of business reputation and costs associated with defendant filing Chapter 11 bankruptcy. Such damages are believed to be not less than $778,000."

Meanwhile, in May 1992, Central filed the third party complaint at issue in this appeal. Central alleged that, to

the extent Mr. Barbee's allegations were true, McCormack breached its contract with Central, breached express and implied warranties, and was negligent in its design of the coils. The complaint alleged: "To the extent Central has any liability to Barbee for the damages claimed by Barbee, Central is entitled to contribution and/or indemnity from McCormack." Central also alleged "McCormack made material misrepresentations concerning the design, performance and capabilities of the coils furnished which were false and which were relied upon by Central and others."[1]

The superior court granted McCormack's motion for summary judgment, and later denied Central's motion for reconsideration.

Central and Mr. Barbee then settled their dispute. Central agreed to pay Mr. Barbee $250,000 and to forgive Mr. Barbee's contract debt, and Mr. Barbee agreed to pay $30,000 for litigation costs incurred by Central. The court approved the settlement as reasonable.

In reviewing a summary judgment order, this court engages in the same inquiry as did the superior court. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its entitlement to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Our Lady of Lourdes Hosp.*, 120 Wn.2d at 452.

Here, while most of the details are uncontested, the parties dispute several facts. The most prominent of these is whether McCormack's coils were defective. Considering

---

[1]The complaint referred to alleged representations by McCormack in 1987 and 1989 that the coils had been properly manufactured and met the contract specifications.

the facts and their inferences most favorably to Central, for purposes of this decision we assume (without finding) that the coils were defective. We will address other factual disputes as they arise in the analysis.

Also, the record does not reveal the details of Mr. Barbee's dispute with Central regarding the "Sullaire equipment." Central argues it was not independently negligent, suggesting the Sullaire problems also were the result of McCormack's defective coils. Even assuming this is true, Central cannot logically contend McCormack's liability extends to other problems, unrelated to the defective coils. To the extent the superior court's decision was based on Central's attempt to shift responsibility to McCormack for events with which it had no factual connection, the order was correct. Our decision here therefore addresses only McCormack's liability to Central arising from its allegedly defective coils, and from its alleged misrepresentations to Central.

█ Washington law recognizes two types of " 'product liability claims' " for breach of warranty. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 343, 831 P.2d 724 (1992). One is a tort-based claim under the Washington Products Liability Act (WPLA), RCW 7.72.010(4); the other is a contract-based claim under the Uniform Commercial Code (U.C.C.), RCW 62A.2-313 through .2-315. *Id.* at 343. WPLA claims are limited to recovery for physical harm to persons or property; claims seeking recovery for pure economic losses must be brought under the U.C.C. RCW 7.72.010(6); *Berschauer/Phillips Constr. Co. v. Seattle School Dist. 1*, 124 Wn.2d 816, 821-22, 881 P.2d 986 (1994); *Stanton v. Bayliner Marine Corp.*, 123 Wn.2d 64, 69, 866 P.2d 15 (1993), *cert. denied*, 115 S. Ct. 78 (1994); *Touchet Valley*, 119 Wn.2d at 351.

Central argues its complaint raises two types of claims. First, it contends it is entitled to pass along to McCormack any liability it suffers as a result of McCormack's breach of warranties. Second, it contends McCormack is

independently liable to Central on the basis of its alleged negligent misrepresentations to Central.

We begin by analyzing the first category of claims. RCW 4.22.040(1) provides for a right of contribution between entities "who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them." The statute, enacted as part of the WPLA, abolished "[t]he common law right of indemnity between active and passive tort feasors." RCW 4.22.040(3); Laws of 1981, ch. 27, § 12.

■ This statutory right expressly applies only to entities that are jointly and severally liable. Central cannot be jointly and severally liable under these circumstances. RCW 4.22.070(1) requires generally that a fact finder allocate fault among all entities, even nonparties. Parties are severally — not jointly — liable for their proportionate shares of the claimant's damages.[2] RCW 4.22.070(1); *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294, 840 P.2d 860 (1992). Under this statutory scheme, Central will not be liable for damages other than those resulting from its own fault, and there would be no damages attributable to McCormack to which Central would be entitled under the contribution statutes.

■ A critical issue raised in this appeal, then, is whether the contribution statutes apply to either or both types of product liability claims. RCW 4.22.015, also enacted as part of the WPLA, defines "fault" as including "liability on a product liability claim. The term also includes breach of warranty . . . ." *See* Laws of 1981, ch

---

[2]The statute does provide for joint and several liability when the at-fault parties acted in concert or when one was an agent or servant of the other. RCW 4.22.070(1)(a). Central does not argue these exceptions apply here. Also, "defendants against whom judgment is entered" are jointly and severally liable if the claimant was not at fault. RCW 4.22.070(1)(b); *see Koste v. Chambers*, 78 Wn. App. 691, 899 P.2d 814 (1995), *review denied*, 128 Wn.2d 1021 (1996). Here, Mr. Barbee did not sue McCormack, and Central concedes the statute of limitations has run on any such claim. Br. of Appellant at 42. Therefore, because McCormack cannot be a "defendant against whom judgment is entered," it cannot be jointly and severally liable.

27, § 9. The statute clearly applies to a tort-based product liability claim under the WPLA. To the extent that Central's claims against McCormack are for liability under the WPLA, then, those claims are not subject to contribution because Central and McCormack cannot be jointly and severally liable.

McCormack argues RCW 4.22.040 applies also to contract-based product liability claims under the U.C.C. It contends the statute abolished the common-law right of indemnity under RCW 4.22.040(3), and the definition of "fault" in RCW 4.22.015 expressly includes breach of warranty. However, RCW 4.22.040(3) abolished only the "common law right of indemnity *between active and passive tort feasors.*" (Emphasis added.) *See generally Rufener v. Scott*, 46 Wn.2d 240, 280 P.2d 253 (1955). Also, while RCW 4.22.015 refers to breach of warranty, as a section of the WPLA it referred to tort-based claims based on breach of warranty.[3] *See* RCW 7.72.010(4). The statutory right of contribution under RCW 4.22.040 is limited to tort-based claims.[4]

Central argues that, even if it has no right of contribution under RCW 4.22.040, it has a separate, independent right of indemnity, either under the common law or

---

[3]The Legislature clearly intended to limit the scope of contribution to tort-based actions. A committee report stated the definition of "fault" was "intended to encompass all degrees of fault *in tort actions* short of intentionally caused harm." (Emphasis added.) SENATE SELECT COMMITTEE ON TORT AND PRODUCT LIABILITY REFORM FINAL REPORT, Senate Journal, 47th Legislature, 617, 635 (1981). *See also* Philip A. Talmadge, *Washington's Product Liability Act*, 5 U. PUGET SOUND L. REV. 1, 17-18 (1981).

[4]This conclusion appears to conflict with this court's decision in *Controlled Atmosphere, Inc. v. Branom Instrument Co.*, 50 Wn. App. 343, 748 P.2d 686 (1988). In that case, Branom supplied a component of a refrigeration system designed and installed by Crowder in a cold storage warehouse. The warehouse was destroyed by a fire originating in the refrigeration system. *Id.* at 344. After settling with the owner, Crowder sued Branom for "indemnity and contribution." *Id.* at 345. Without addressing the nature of the claim (and thus whether the action was a tort- or contract-based claim), the court implied the contribution provisions applied. *Id.* at 345. Nevertheless, the court applied the U.C.C. statute of limitations, RCW 62A.2-725. *Controlled Atmosphere* was decided before *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 774 P.2d 1199, *amended*, 779 P.2d 697 (1989), and *Touchet Valley* clarified the distinction between tort- and contract-based product liability claims.

under the U.C.C. The dispute here reflects a disagreement over the philosophical basis of this type of damages. On one hand, Central's damages may be viewed as arising from McCormack's breach of its warranties to Mr. Barbee, the third party beneficiary of McCormack's contract with Central. *See Touchet Valley*, 119 Wn.2d at 343-50. Indemnity then may be viewed as an equitable principle that permits an innocent entity to obtain compensation for damages it has paid on behalf of another entity whose acts or omissions resulted in the loss. *See, e.g., Stevens v. Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 768 P.2d 1007, *review denied*, 112 Wn.2d 1023 (1989); *Newcomer v. Masini*, 45 Wn. App. 284, 286-87, 724 P.2d 1122 (1986); *Olch v. Pacific Press & Shear Co.*, 19 Wn. App. 89, 93, 573 P.2d 1355, *review denied*, 90 Wn.2d 1017 (1978). On the other hand, Central's damages, including attorney fees, may be viewed as consequential damages arising from McCormack's breach of its direct warranties to Central, under RCW 62A.2-715(2)(a). *See, e.g., Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.*, 28 Wn. App. 539, 547, 625 P.2d 171 (1981).

Regardless of the fundamental underpinning of the claim, Central appears to have a potentially valid claim against McCormack for economic damages it has paid to Mr. Barbee resulting from McCormack's defective coils. Attorney fees are a proper element of consequential damages in such an action.

A separate issue is what statute of limitation applies. In *Controlled Atmosphere, Inc. v. Branom Instrument Co.*, 50 Wn. App. 343, 748 P.2d 686 (1988), this court held the four-year limitation period in RCW 62A.2-725[5] applied under similar circumstances, noting that the position

---

[5]The statute provides in pertinent part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs

Central urges here would "keep alive claims . . . that are unrelated to the subject of the injured plaintiff's action." *Controlled Atmosphere*, 50 Wn. App. at 348. The Utah Supreme Court expressed a similar concern:

> The absolute language of [UTAH CODE ANN.] § 70A-2-725[6], including the provision that an action accrues at the time of tender of delivery regardless of whether an aggrieved party knows of the breach (generally a ground for tolling), indicates a legislative intent that all actions based on breach of contract for the sale of goods be brought, if at all, within four years of the tender of delivery. This interpretation is further supported by the statutory provision prohibiting the parties from extending the limitation period by agreement. The statute was apparently intended to afford ultimate repose in transactions for the sale of goods. Application of the general indemnity rule would contradict this specific direction by extending the time in which to bring an indemnity action based on a breach of warranty to four years after the party seeking indemnity becomes liable. *See, e.g., Gibbons v. Nalco Chemical Co.*, [91 Ill. App. 3d 917, 415 N.E.2d 477 (1980)] (permissible to bring indemnity action nearly nine years after accident that gave rise to underlying lawsuit).

> We are persuaded that the language of § 70A-2-725 indicates an intent that there be repose from all actions based on breach of warranty that are brought more than four years after the tender of delivery of the goods.

*Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984).

Under *Controlled Atmosphere*, the applicable limitation period, pursuant to RCW 62A.2-725, is four years from the tender of delivery, which was in August or September of

---

when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

". . . .

"(4) This section does not alter the law on tolling of the statute of limitations . . . ."

[6]Utah's statute is substantively identical to RCW 62A.2-725 and to U.C.C. § 2-725.

1987. Central did not file its third party claims against McCormack until May 1992, more than four years after the delivery.

However, relying on McCormack's representation (by accepting Central's order through Mr. Martin) that its equipment would provide 29.7 tons of refrigeration and 60,000 cfm, Central argues McCormack's warranty "explicitly extend[ed] to future performance of the goods," and the claim thus accrued when the breach was or should have been discovered. RCW 62A.2-725(2). Washington courts have not addressed what constitutes "future performance" under this provision, but the Ninth Circuit Court of Appeals, applying Washington's statute, recently summarized the law in this area:

> The overwhelming majority of . . . cases . . . interpret the exception very narrowly:
>
> > Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word "explicitly," they have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test and no implied warranties can since, by their very nature, they never "explicitly extend to future performance."
>
> *Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S. Ct. 2032, 60 L. Ed. 2d 396 (1979). Under this majority rule, therefore, courts construe "the term 'explicit' [to mean] that the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth." *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 822 (8th Cir.1983). *See South Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 410 A.2d 1359, 1366 (1980) ("[S]ince all warranties in a sense extend to the future performance of goods, courts will not lightly infer from the language of express warranties terms of prospective operation that are not clearly stated."); 1 JAMES WHITE & ROBERT SUMMERS, UNIFORM COMMERCIAL CODE § 11-9 (3d ed. 1988) ("[I]t should be clear that this extension of the normal warranty period does

not occur in the usual case, even though all warranties in a sense apply to the future performance of goods.").

The rationale underlying the rule is fulfillment of statutory purpose. Section 2-725 "serve[s] the important function of providing a point of finality for businesses after which they c[an] destroy their business records without the fear of a subsequent breach of contract for sale or breach of warranty suit arising to haunt them." *Ontario Hydro v. Zallea Sys.*, 569 F.Supp. 1261, 1266 (D.Del. 1983).

*Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550-51 (9th Cir. 1994) (footnotes omitted).

Central relies on authorities expressing what the Ninth Circuit Court has called a "loose" application of U.C.C. § 2-725. *Western Recreational Vehicles, Inc.*, 23 F.3d at 1552 n.5. However, particularly with respect to commercial transactions such as this, we are persuaded that the majority rule comports with the statutory purpose of promoting stability in business transactions. We therefore hold that, under RCW 62A.2-725(2), a warranty as to future performance of goods must refer expressly to a future time.

McCormack's representations did not refer to a specific future time. At best, they constituted a warranty that McCormack's equipment would, at the time of delivery, provide the specified cooling capacity. Assuming (for purposes of this decision) that the equipment did not provide the specified cooling capacity at the time of delivery, Central had four years to bring a claim against McCormack. Its failure to do so bars its warranty claim here.

Central argues our interpretation could result in an unfairness to an innocent wholesaler who sells a manufacturer's defective goods to a buyer. Central argues a buyer who wants to hold the wholesaler solely liable could wait until the final day of the four-year limitation period to sue the wholesaler for the warranty breach, leaving the manufacturer untouched. However, RCW 62A.2-607(3)(a)

requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." In light of this requirement, we find it unlikely that any buyer would delay enforcement of its contractual right merely to avoid obtaining damages from a third party.

Moreover, the hypothetical situation Central describes is not consistent with the facts of this case. Central itself concedes it was aware of the problem when Mr. Ward submitted his affidavit on October 17, 1989, about two years after the coils were delivered and installed. Under its own version of the events, then, Central had almost two more years to file its indemnity claim against McCormack. Even if there is a *potential* for unfairness in some hypothetical circumstances, Central has suffered none in this case.

We conclude Central has no viable claim for contribution for any tort-based damages, because it is liable for those damages only in proportion to its own fault. Also, Central did have a potentially viable claim for indemnity for purely economic damages it may have paid on McCormack's behalf for McCormack's breach of warranty. However, Central failed to raise its indemnity claim within the applicable four-year statute of limitations. The superior court properly dismissed these claims.

We next address Central's contention that it also has alleged an independent claim for negligent misrepresentation, based on representations McCormack made at the time of the sale and afterward.

■ The WPLA preempts tort-based common-law product liability remedies. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853, 774 P.2d 1199, *amended*, 779 P.2d 697 (1989). RCW 7.72.010(4) includes misrepresentation among the common-law claims that can be brought as product liability claims. Therefore, Central's misrepresentation claim is properly characterized as a product liability claim under the WPLA.

■ Central argues its misrepresentation claim is permit-

ted under RCW 62A.2-721, which provides: "Remedies for material misrepresentation or fraud include all remedies available under this Article for non-fraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." Central contends this provision anticipates the continued viability of common-law claims for misrepresentation or fraud. However, in light of the WPLA's preemption of other common-law claims, there is no merit to Central's argument that a common-law claim for misrepresentation exists, separate from the WPLA.

Moreover, the facts of this case do not support an independent claim for misrepresentation. The representations on which Central relies were identical to McCormack's express and implied warranties. Central's damages were identical to those it seeks for McCormack's breach of warranties. Any damages Central suffered as a result of McCormack's breach could have been recovered through the indemnity action.

Central also relies on Mr. Martin's representations in 1989 that the coils had been properly manufactured and met the contract specifications. Even assuming Central can establish Mr. Martin's representations may be attributed to McCormack, the statements merely repeated McCormack's earlier warranties. Central's argument, suggesting a seller's defense of its product constitutes a new representation and a renewal of its warranties, would render any limitation period meaningless.

Central understandably attempts to state an independent claim as a way of avoiding the statute of limitations on its breach of warranty claim. In determining the appropriate statute of limitations, the "essence of the case controls." *Martin v. Patent Scaffolding*, 37 Wn. App. 37, 39, 678 P.2d 362, *review denied*, 101 Wn.2d 1021 (1984); *see City of Algona v. City of Pacific*, 35 Wn. App. 517, 520, 667 P.2d 1124, *review denied*, 100 Wn.2d 1028 (1983). Here, the essence of Central's misrepresentation claim is breach

of warranty. McCormack's liability, if any, should be based on breach of warranty, rather than on misrepresentation. The superior court properly dismissed this claim.

The superior court's order of dismissal on summary judgment is affirmed.

SWEENEY, C.J., and MUNSON, J., concur.

Review granted at 130 Wn.2d 1016 (1996).