Cecil S. WINGO, Sr., Plaintiff,

v.

The CELOTEX CORPORATION, Defendant–Appellant,

Norfolk & Western Railway Company, Defendant–Appellee.

and

KEENE CORPORATION; GAF Corporation; Garlock Inc.; Nicolet Inc; Southern Textile Corporation; H.K. Porter, Inc; American Optical Co; Auto Spring & Bearing Company, and its Successor in interest to Johnson Enterprises, Inc.; Babcock & Wilcox Co; Blue Ridge Talc Co., Inc.; Certain Teed Corporation; Crane Co; General Electric Company; Goodyear Tire & Rubber Co.; Graybar Electric Co; Koppers Co; WEM Inc; Westinghouse Electric Corporation; Acme Manufacturing & Casket Co.; Anchor Packing Co; Atlas Turner, Inc.; Dana Corporation; E.A. Kinsey Co.; Earl B. Beach Co., Defendants,

v.

JOHNSON ENTERPRISES, INC.; National Asbestos Co.; TNT Liquidating Co.; Tannetics, Inc.; U.S. Gypsum; Uniroyal, Inc.; Vellumoid, Inc.; John Crane–Houdaille, Inc.; Raymark Industries, Inc. Third Party Defendants.

No. 86–1232.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1987.

Decided Nov. 24, 1987.

Before WIDENER, PHILLIPS, and ERVIN, Circuit Judges.

WIDENER, Circuit Judge:

The Celotex Corporation appeals from the judgment of the district court granting the motion of the Norfolk & Western Railway Company for indemnity against Celotex. We are of opinion that the district court erred, and we reverse.

The original plaintiff in this case, Cecil Wingo, Sr., sued N & W and various manufacturers (including Celotex) to recover damages for injuries incurred due to his exposure to asbestos while employed as a laborer for N & W. Celotex sold to the N & W the asbestos which injured Wingo. After a jury trial, Wingo was awarded $200,000 on his claim against N & W;[1] his claim against the manufacturers was found to be barred by the statute of limitations.[2] However, the jury also found that the manufacturers had breached an implied warranty of merchantability by failing to warn N & W of the dangers of asbestos products sold to N & W. This breach of warranty forms the basis for N & W's cross-claim for indemnity against the manufacturers. The district court entered judgment only against Celotex on the cross-claim since there was no finding of exposure as to any of the other manufacturers. 638 F.Supp. 107 (W.D.Va.1986).

The jury, in its special verdict, found that N & W knew of the hazard that its employees' exposure to asbestos dust could cause lung disease;[3] that it knew of measures to prevent harmful exposure of its employees to asbestos dust and knew that such measures should be used;[4] that it failed to maintain a reasonably safe place to work; that it failed to provide reasonably safe tools and equipment with which to perform the work; that it failed to adequately train the workers; that it allowed unsafe work

Robert Elkin Payne (David Craig Landin, Deborah M. Russell, Kenneth F. Hardt, McGuire, Woods, Battle & Booth, Richmond, Va., on brief), for defendant-appellant.

William Beverly Poff (James W. Jennings, Jr., Bradley W. Fitzgerald, D. Stan Barnhill, Frank K. Friedman, Woods, Rogers & Hazelgrove, Roanoke, Va., on brief), for defendant-appellee.

1. Wingo's claim against N & W was prosecuted under the Federal Employers' Liability Act.

2. No question as to this finding is made on appeal.

3. At one place on the special verdict form, the question was, did N & W "know, or should it have known;" at another, the question was, did N & W "know."

4. Same as footnote 1. The "should have known question" did not include any question as to use.

practices to become the standard practice; and that it failed to eliminate or control dust exposure hazards. It found that the negligence of the N & W was a contributing cause of the asbestos injury or disease of Wingo. On instructions from the court that in order to find a breach of implied warranty of merchantability by Celotex, it must find "the N & W damaged by the defect," it found that Celotex had breached an implied warranty of merchantability by a failure to warn the N & W of the hazards of asbestos, thus rendering the product defective.

There was no other damage to the N & W involved in the case except the injury to Wingo, so the jury found beyond question that both N & W's negligence and the breach of warranty of Celotex contributed to Wingo's injury. These facts stand as true on appeal.

On this set of facts, we must determine whether or not N & W is entitled to recover from Celotex on an implied right of indemnity. There is nothing in the record and no claim that any express contractual right of indemnity exists. We decide this case under Virginia law under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but there are no Virginia cases directly on point, so we decide the case upon our opinion as to what the Virginia Supreme Court would decide if the case were presented to it. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

The general law is that where a supplier of chattels supplies a dangerously defective chattel to a buyer for the use of another and both have become liable to the user on account of the use of the product, an implied right of indemnity in favor of the buyer against the supplier is usually implied. See *Restatement of Restitution* § 93(1). An exception to this rule is made, however, where the party seeking indemnity has been guilty of an independent act of negligence which also is a cause of the user's injury. In such a case, the supplier has no duty of indemnification to his purchaser. *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22 (3d Circuit 1986).

It is apparent that, following this rule which we perceive to be the general law which would be followed in Virginia, N & W would have no right to the indemnity it claims. N & W asserts that such an exception for negligence does not exist and, in the alternative, argues that in any event its conduct did not amount to active negligence but was merely passive. It relies on two cases for the proposition that its negligence should not bar an action for implied contractual indemnity, *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 232, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and *General Electric Co. v. Moretz*, 270 F.2d 780 (4th Cir.1959), cert. den. 362 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960).

In *Ryan*, a stevedore was injured in the unloading of a ship as result of a negligent loading of the ship by his employer, Ryan, at a previous port of call. The stevedoring company had a contractual obligation to load and unload the ship at both ports. The ship had the right, however, to supervise and reject the storage of the negligently loaded cargo and had not done so. The stevedore sued and was awarded a judgment against the shipowner, which sued the stevedoring company, claiming a right of indemnity. The Court held that such a right of indemnity existed because of the contract between the stevedoring company and the shipowner, based upon the stevedoring company's "purely consensual obligation *owing to the shipowner* to store the cargo in a reasonably safe manner." 350 U.S. at 131–32, 76 S.Ct. at 236–37 (italics in original). It held that the right of indemnity arose out of the essence of the stevedoring company's contract and was "not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship." 350 U.S. at 133, 76 S.Ct. at 237. The court continued that it was a warranty of workmanlike service comparable to a manufacturer's warranty of the soundness of its manufactured product. It further held that the stevedoring company "... as the warrantor of its own service, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense." 350

U.S. at 134–35, 76 S.Ct. at 237–38. *Ryan* was decided under admiralty law. In *Moretz*, General Electric had improperly loaded a trailer owned and operated by Mason & Dixon Lines, a common carrier. The trailer was loaded on the premises of General Electric and delivered by a pickup driver to the Mason & Dixon terminal. That driver reported to the officials in charge of the terminal that the load had not been properly braced. Despite this, Mason & Dixon, as it was its duty so to do, did not brace the load. Shortly after the trailer left the terminal in shipment, the load shifted and, on that account, the driver of the truck was injured and sued General Electric for its negligence. The driver's verdict against General Electric was upheld, and General Electric sued Mason & Dixon for indemnity on account of that judgment. The court held that General Electric had a right of indemnity and that the provisions of the Interstate Commerce Commission's tariff formed a part of the contract between General Electric and Mason & Dixon in the case. Under the tariff, Mason & Dixon assumed the direct and specific obligation to General Electric to secure the cargo safely so that it would not shift during the movement "... and became liable for any loss caused by its failure to carry out its promises, unless it is excused by the concurring negligence of General Electric." 270 F.2d at 787. The court held that the initial failure of General Electric to load the goods properly in no way prevented Mason & Dixon from carrying out its own statutory contractual duties.

At first glance, *Ryan* and *Moretz* seem to argue in favor of N & W, but we think those cases should not be followed here. *Ryan* was a case which arose in admiralty, and while the opinions of the Supreme Court are of course persuasive to other courts, especially the inferior federal courts, in fact situations which are somewhat alike, we are not persuaded to apply this rule of admiralty law as a matter of state common law if it is contrary to the general law, which it is here. Even if applicable, *Ryan* held that the stevedoring company could not use the shipowner's failure to discover and correct the stevedoring company's breach of warranty as a defense. In our case, Celotex does not claim that N & W failed to discover and correct the breach of warranty by Celotex. Norfolk & Western knew of the dangerous propensity of asbestos during the time that it was being used by Wingo and, despite this knowledge, failed to provide reasonably safe equipment for Wingo to perform his work. Along the same line, *Moretz* depended for its holding to some extent on *Ryan*, and we note that both *Ryan* and *Moretz* rely on a contractual obligation existing between the party seeking indemnity and the party from whom indemnity is sought. No similar contractual obligation is present here. In any event, *Moretz* specifically reasoned that General Electric would not have been entitled to indemnity if it had been guilty of "concurring negligence." 270 F.2d at 787. In the case before us, the jury has found that both the breach of warranty on the part of Celotex and the negligence of N & W caused Wingo's injury. Thus, under *Moretz* there may be no recovery in this case, the contributing negligence of N & W having been established by the jury's verdict and being, we think, the equivalent of concurring negligence spoken of in *Moretz*. A third reason that *Ryan* and *Moretz* should not control this case is that any obligation of indemnity between N & W and Celotex must be implied in law, and *Ryan* specifically stated that it was not based upon "a quasi contractual obligation implied in law." 350 U.S. at 133, 76 S.Ct. at 237.

Norfolk & Western next argues that, although it was negligent and that such negligence contributed to Wingo's injury, such negligence was passive and not active. Passive negligence, it argues, should not bar its right of indemnity, although active negligence may.

The difficulty with this position is that no cases are brought to our attention in which the Virginia court has adopted this rule. The only case in which the matter has been discussed in connection with indemnity that has come to our attention is *Vepco v. Wilson*, 221 Va. 979, 277 S.E.2d 149 (1981). In that case, Vepco apparently took the same

position taken by N & W here, but the court decided the case adversely to Vepco on another ground and neither discussed nor indicated whether or not the position had arguable merit. It is true that the Virginia court has discussed a distinction between active and passive negligence in other contexts such as in cases involving the duty of a landowner to an invitee, or the like. See, e.g., *Busch v. Gaglio*, 207 Va. 343, 150 S.E.2d 110 (1966). But we have no reason to think that such a distinction would be made in cases involving indemnity, which we note parenthetically in Virginia must necessarily grow out of a contractual relationship, *Vepco* at 981–82, 277 S.E.2d 149. The nearest case which has come to our attention on the subject is *McLaughlin v. Siegel*, 166 Va. 374, 185 S.E. 873 (1936), where, in holding that the release of a master from a joint judgment for a tort obtained against a master and servant operated to release the servant also, the court discussed the right of contribution as an exception to the general rule under common law that there is no right of contribution between joint tortfeasors. The court said, at p. 377, 185 S.E. 873, "There are numerous exceptions to the rule, one of which is that where a party is only a technical wrongdoer and did not actually participate in the wrongful act, such party, on being compelled to pay damages to the injured party, is entitled to contribution or indemnity from the actual wrongdoer..... An illustration of this liability of the master for contribution to the servant is where the servant was blamelessly ignorant of the unlawful or illegal nature of the act which produced the injury, and committed the tortious act under the master who had full knowledge of its illegality." Even under this rule, N & W would not be entitled to indemnity. It was not blamelessly ignorant of the acts which produced the injury; indeed, it is a fact that its negligence contributed to the injury. It may not sustain as a matter of fact any position that it did not actually participate in the wrongful act, for it is a matter of fact that both the breach of warranty of Celotex and the negligence of N & W caused Wingo's injury.

One other Virginia case is persuasive that we should adopt the position of the Restatement in this case. *Maryland Cas. Co. v. Aetna, etc. Co.*, 191 Va. 225, 60 S.E.2d 876 (1950), was a case which reasoned that a master who had satisfied a judgment caused solely by the negligent act of his servant would be subrogated to the rights of the injured party and might recover against the servant. The court depended in part upon *Restatement of the Law, Restitution* § 96, which states that "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." The dependence of the Virginia court on the Restatement in deciding this closely allied subject is further persuasive to us that Virginia would follow the *Restatement* view of the general law in the case now before us.

Our analysis of Virginia law thus leads us to believe, and we are of opinion, that Virginia would adopt what we believe to be the general law as stated in § 93(1) of the *Restatement of Restitution* with the exception as noted above in *Rabatin*. We are further of opinion that N & W was guilty of independent acts of negligence which were a cause of the plaintiff's injury. On that account, we are of opinion that N & W has no right to indemnification.

Because N & W has no right of indemnification in this case, we have no occasion to discuss the other questions raised on appeal, and we express no opinion as to any of them.

The judgment of the district court is accordingly

REVERSED.