[No. B056060. Second Dist., Div. Two. Mar. 31, 1992.]

CARRIER CORPORATION, Plaintiff and Appellant, v.
DETREX CORPORATION, Defendant and Respondent.

1524

COUNSEL

Hanna & Morton, Edward S. Renwick, John R. Zebrowski, David A. Ossentjuk and Stephen G. Mason for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Stephen C. Taylor, Roy G. Wuchitech, Stephen J. O'Neil and Michael John Miguel for Defendant and Respondent.

OPINION

NOTT, J.—Appellant Carrier Corporation (Carrier) appeals from a judgment entered following the grant of summary judgment in favor of respondent Detrex Corporation (Detrex).

The central issue on appeal is whether the statute of limitations under California Uniform Commercial Code section 2725 requires that an action for indemnification based on express or implied warranty be brought within four years from the date of delivery of the product.

FACTS

Carrier produces air conditioning units at its leased facilities in the City of Industry. In 1979, it contracted with Detrex to provide it with a system to

remove the grease which accumulates on air conditioning coils during the manufacturing process. The contract provided that Detrex would design and manufacture the system, and then install and test it.

Detrex did in fact produce the degreasing system, and then subcontracted the installation to South-Lyn Mechanical, Inc., a local pipefitting and welding company. The system was completed and on-line as of September 1979.

In April of 1985, Carrier noticed a higher than normal usage of PCE.[1] Detrex was consulted, but neither company could identify the source of the problem. On April 25, 1985, Carrier discovered that PCE was being lost through the system's degreaser sump.

The sump was designed to serve as a catch basin to contain wastewater condensate expelled by the system. It was a 55-gallon carbon steel drum dropped into a hole below floor level, having its lid flush with and cemented to the concrete floor. Inside the drum was a pump which pushed water through a connecting pipe across the ceiling and down to a floor drain approximately 50 yards from the central degreasing system.

Carrier found that PCE was being lost into the groundwater for two reasons: First, because the drum was not encased in concrete, the carbon steel was exposed not only to the material inside the drum, but also to the corrosive qualities of the soil. As a result, the skin of the drum failed, allowing its contents to leak into the groundwater. Second, due to a design flaw in the system, pure PCE was making its way into the sump.

Not surprisingly, Carrier attributed those problems to faulty design and installation by Detrex. As might further be anticipated, Detrex denied any such responsibility.

On April 26, 1985, Carrier notified the appropriate governmental agencies of the possibility that PCE had been contaminating the groundwater below its plant. Four days later, the County of Los Angeles Department of Public Works ordered Carrier to immediately implement "clean-up and abatement measures" to remedy the PCE contamination. On May 1, 1985, the California Regional Water Quality Control Board, Los Angeles Region, (Water Board) also directed Carrier to investigate the extent of the contamination.

---

[1] A solvent known as Perchloroethylene (PCE).

That investigation revealed that the PCE had indeed leached through the soil into the groundwater. On March 7, 1986, the Water Board issued Carrier a formal cleanup and abatement order.[2]

Since April of 1985, Carrier has made ongoing efforts to rectify the PCE contamination, and estimates that in doing so, it has expended $10 million—a sum vigorously contested by Detrex.

On October 3, 1986, Carrier made a written demand for indemnification. Detrex declined, and on October 28, 1988, Carrier filed a complaint for damages, alleging causes of action for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose.

Carrier's complaint was amended in March of 1990 to ask for indemnification as well as damages on all three counts.

In September of 1990, after completion of discovery and just before trial, Detrex filed three motions for summary judgment as follows: First, that the relief sought was barred by the four-year limitation provision of California Uniform Commercial Code section 2725, subdivision (2) and the three-year limitation of Code of Civil Procedure section 338, subdivision (b); second, there was no evidence showing that Detrex designed or installed the sump; and third, that Carrier was seeking consequential damages specifically exempted by the indemnification provisions contained in Detrex's proposal.[3]

The trial court ruled in favor of Detrex on the first motion, and the other two were taken off calendar as moot.

## DISCUSSION

Carrier and Detrex have agreed that the sale and purchase of the degreasing system places the parties within the ambit of California Uniform Commercial Code section 2725. That statute says, in pertinent part: "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . . [¶] (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made. . . .*" (Italics added.)

---

[2]The Porter-Cologne Act authorizes regional water quality boards to issue cleanup and abatement orders to any person who has discharged or discharges waste into California waters. (Wat. Code, § 13304, subd. (a).)

[3]The contract documents consist of a proposal by Detrex and purchase orders by Carrier. The differences between the indemnification language in the Carrier purchase order and that found in the Detrex proposal will be discussed below.

As Detrex points out, the complaint was filed in 1986, more than seven years after tender of delivery of the product. Therefore, if the relief sought was merely for breach of express or implied warranty, this would be a very brief opinion.

The request for indemnification, however, places matters in a different light. In that regard, Detrex urges that: (1) the specific limitation period of California Uniform Commercial Code section 2725 takes precedence over general laws relative to statutes of limitations; (2) there is no true "indemnity" since (a) Carrier's indemnity provision never became part of the contract, and (b) there was no third party to whom Carrier became liable or to whom it paid damages; (3) that even if the statute of limitations commenced in April of 1985, the four-year period expired since Carrier did not amend its complaint to include an action for indemnity until March of 1990. We will discuss each of these contentions in turn.

### 1. Whether "Date of Delivery" Triggers the Commencement of the Statute of Limitations

Where there has been a sale of goods under the California Uniform Commercial Code, when does the statute of limitations commence for indemnification of an express or implied warranty?

Detrex argues that the "date of delivery" under California Uniform Commercial Code, section 2725, subdivision (2) controls, in that the purpose of adding section 2725 was to introduce a uniform statute of limitations that "takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four-year period as the most appropriate to modern business practice." (Official code com., Deerings Ann. Cal. U. Com. Code, § 2725 (1986 ed.) p. 292; 23A West's Ann. Cal. U. Com. Code (1992 pocket supp.) p. 77; *Mysel* v. *Gross* (1977) 70 Cal.App.3d Supp. 10 [138 Cal.Rptr. 873].)

Detrex asserts that there is a strong public policy to set a time certain to limit the exposure of a seller, and the Legislature has selected four years from the date of delivery. Detrex concludes that to allow Carrier to "plead around" California Uniform Commercial Code, section 2725, subdivision (2) by the device of asking for indemnification defeats the legislative intent. Although there are no California cases directly on point, Detrex cites cases from other jurisdictions that have considered the matter and have held that Uniform Commercial Code section 2-725 (and the counterpart provisions adopted by each state) will bar indemnity claims based on breach of warranty if those claims were brought more than four years after delivery. (See *PPG Industries, Inc.* v. *Genson* (1975) 135 Ga.App.248 [217 S.E.2d 479];

*Maxfield* v. *Simmons* (1983) 96 Ill.2d 81 [70 Ill.Dec. 236, 449 N.E.2d 110]; *Sheehan* v. *Morris Irr., Inc.* (S.D. 1990) 460 N.W.2d 413; *Perry* v. *Pioneer Wholesale Supply Co.* (Utah 1984) 681 P.2d 214; *Farmers Nat. Bank* v. *Wickham Pipeline* (1988) 114 Idaho 565 [759 P.2d 71]; *Anixter Bros., Inc.* v. *Central Steel & Wire* (1984) 123 Ill.App.3d 947 [79 Ill.Dec. 359, 463 N.E.2d 913].)

There is another line of cases, headed by *McDermott* v. *City of New York* (1980) 50 N.Y.2d 211 [428 N.Y.S.2d 643, 406 N.E.2d 460], that takes the opposite view.

In *McDermott*, a city employee brought an action against the city after his arm was severed by the hopper mechanism of a sanitation truck. The truck had been delivered to the city on February 5, 1969, and the accident occurred on February 24, 1969.

The city did not file suit for indemnity against Heil Company (the manufacturer of the hopper and body of the truck) until June of 1975. Heil Company sought dismissal under the four-year limitation provision of Uniform Commercial Code section 2-725, as measured from the date of delivery of the truck. The trial court agreed with the rationale and ordered the city's action dismissed. The intermediate appellate court affirmed. New York's highest court, the Court of Appeals, had a different view. In reversing the dismissal, the court specifically held that the cause of action for indemnification accrued upon payment to the injured person, and not from the date of the delivery of the truck.

Rejecting the "date of delivery" concept of Uniform Commercial Code section 2-725, the court said ". . . the indemnity claim is a separate substantive cause of action, independent of the underlying wrong," and the fact that ". . . the city's indemnification cause of action stems from an allegedly defective product does not alter the general Statute of Limitations rules." (406 N.E.2d at pp. 462-463.)

Finally, the court said that, in applying the equitable principles of indemnification, ". . . it would be illogical, in view of the breadth of the indemnification concept, to deny indemnity where a duty imposed by the law of products liability is breached, while allowing it in all other instances of breach of duty. No rationale supports that result." (406 N.E.2d at. p. 463.) (See *Walker Mfg. Co.* v. *Dickerson, Inc.* (4th Cir. 1980) 619 F.2d 305, 309-310; *Wood River* v. *Geer-Melkus Const. Co.* (1989) 233 Neb. 179 [444 N.W.2d 305, 309-312]; *Hanscome* v. *Perry* (1988) 75 Md.App. 605 [542 A.2d 421, 425]; *City of Clayton* v. *Grumman Emer. Prod.* (E.D.Mo. 1983) 576 F.Supp. 1122, 1127-1128; *Cyr* v. *Michaud* (Me. 1983) 454 A.2d 1376;

*Thermo King Corp.* v. *Strick Corp.* (W.D.Pa.1979) 467 F.Supp. 75, 77, affd. without opn., *Thermo King Corp.* v. *Strick Corp.* (3d Cir. 1979) 609 F.2d 503.)

■ We agree with the result in *McDermott.* There is a substantial difference between an instance where a product simply fails as opposed to a situation where the product fails and causes damage to a third party. We therefore hold that in a case involving indemnification for damages under express or implied warranty based on a sales contract, the traditional time limitations for commencement of actions will prevail over California Uniform Commercial Code section 2725.

### 2. *Whether This Case Presents Facts Permitting Indemnification*

■ In the proposal accepted by Carrier, Detrex included in its "standard terms and conditions" a limited warranty which exempted liability for "consequential damages."[4] Detrex asserts that Carrier's indemnification claim is in fact one for consequential damages. That argument overlooks the fact that the last contractual documents were the purchase orders sent by Carrier and accepted by Detrex. The first purchase order contained a warranty in paragraph 3 that is broader than the Pacific Ocean.[5] At the very least, therefore, there is a triable question of fact as to which, if either, of the warranty provisions applies.

■ Detrex's next assertion is that there are no facts warranting indemnification since Carrier did not become liable to or pay damages to any third party. We disagree.

It is true that in a traditional setting, an indemnitee becomes liable to a third party and/or pays damages to a third party in order to pursue an action against the indemnitor. (Civ. Code, § 2778, subd. 2; 14 Cal.Jur.3d, Contribution and Indemnification, § 47, p. 700.) However, we view the facts in this

---

[4] The Detrex warranty reads in pertinent part: "Detrex warrants that the equipment to be delivered hereunder will be of the kind and quality described in the proposal and no other warranty will be implied. . . ."

"The liability of Detrex arising out of the supplying of said equipment, or its use, whether on warranties or otherwise, is limited as herein provided and does not extend to consequential damages."

[5] The Carrier warranty provides in pertinent part that Detrex will indemnify Carrier from ". . . all losses, costs and expenses, and from and against all claims, demands, suits, actions for damages, losses, costs and expenses and from and against all liability awards, judgments and decrees of whatsoever nature for any and all damages to property of the Buyer or others of whatsoever nature and for any and all injury to any persons arising out of or resulting from the negligence of Seller, breach of this order in the manufacture of the goods, from any defect in materials or workmanship, from the failure of the goods to perform to its full capacity as specified in the order, specification or other data, or from the breach of any express or implied warranties."

case as having the potential to merit indemnification. Carrier became liable to the State of California by virtue of the cleanup and abatement order of March 7, 1986. Had Carrier not complied with the order, it likely would have had to defend an injunctive action brought by the Attorney General. Additionally, if the Water Board did the abatement work, it would be entitled to recover the costs thereof from Carrier in a civil action. (Wat. Code, § 13304.)

Under the facts presented, we do not believe Carrier should be penalized for taking appropriate preventative measures instead of sitting back and waiting to be sued by either its landlord, a neighbor, or a governmental agency.

### 3. Whether the Four-year Statute of Limitations Under Code of Civil Procedure Has Expired

The parties concede that the time limitation for an action for indemnity under the facts of this case is controlled by the four-year provision of Code of Civil Procedure section 337, subdivision 1.[6]

Detrex asserts that even if that statute prevails over California Uniform Commercial Code section 2725, Carrier's claim is still time barred. The basis of that argument is that the commencement date for indemnification began in April of 1985, when Carrier discovered the problem and began abatement procedures. However, Carrier did not amend its complaint to state a claim for indemnity until March 23, 1990, almost five years later.

Detrex says that the indemnity claim cannot "relate back" because the original complaint only mentioned breach of warranty. That contention is without merit.

An amended complaint "relates back" to the original complaint when it is based on the same general set of facts as the original complaint, seeks relief for the same injuries, and refers to the same incident. (Goldman v. Wilsey Foods, Inc. (1989) 216 Cal.App.3d 1085, 1094 [265 Cal.Rptr. 294].) Carrier's amended complaint easily meets those requirements. The only items of modification that are worthy of note in the amended complaint (a) point out that the same contractual documents included language for indemnification, (b) modify the prayer to request indemnity, and (c) reduce the monetary claim from $100 million to $10 million.

---

[6]Due to the "relation back" principle, our holding on this subject would be the same even under the two-year limitation period on implied indemnity under Code of Civil Procedure section 339.

## Miscellaneous Issues

Our holding relative to the commencement date of the limitation period for indemnification in a sales contract based on express or implied warranty makes unnecessary any discussion of (a) Carrier's assertion that the statute of limitation under California Uniform Commercial Code section 2725 was "tolled" until the April 1985 discovery of facts relating to the indemnity; and (b) Detrex's claim that the three-year limitation period under Code of Civil Procedure section 338, subdivision (b) is a complete bar to Carrier's action. We also note that Carrier has conceded it is not seeking relief for injury to real property.

## Disposition

The matter is reversed. Carrier is awarded costs on appeal.

Gates, Acting P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied April 16, 1992, and respondent's petition for review by the Supreme Court was denied June 18, 1992.