946 P.2d 760 (1997)
133 Wash.2d 509
CENTRAL WASHINGTON REFRIGERATION, INC., a subsidiary of Central Heating & Plumbing, Inc., Petitioner,
v.
Les BARBEE d/b/a/ Barbee Orchards, Defendant,
McCormack Engineering, a Washington corporation, Respondent.
No. 64431-4.
Supreme Court of Washington, En Banc.
Argued May 14, 1997.
Decided November 13, 1997.
*761 Halverson & Applegate, James Berg, Yakima, Larson & Perkins, James A. Perkins, Yakima, for petitioner.
Lane, Powell, Spears & Luberski, Michael Runyan, Charles Huber, Michael King, Seattle, for respondent.
SANDERS, Justice.
We are asked whether a buyer of goods may bring an indemnity action against the seller for liability incurred to a third party for a defect in the goods, and, if so, when the statute of limitations begins to run. We hold a buyer may maintain such indemnity action and that the statute of limitations begins to run when the buyer pays damages to the third party or the third party obtains judgment against the buyer, whichever is first in time.
In 1987 petitioner Central Washington Refrigeration, Inc. (Central) contracted with a Yakima orchard to install a set of cold storage rooms to store apples and other fruit. Central in turn contracted with respondent McCormack Engineering (McCormack) to purchase the refrigeration coils which Central was to install. Pursuant to the sales agreement McCormack specially manufactured the coils according to Central's specifications and timely delivered them in August 1987 at which time Central installed the coils in the cold storage rooms.
From the start, however, the orchard experienced problems with the cold storage rooms. After several repair attempts and an intervening bankruptcy by the orchard, the orchard defaulted on payments for the cold storage rooms and Central subsequently sued for payment. In March 1989 the orchard counterclaimed for damages asserting Central misdesigned the cold storage system, used poor workmanship in building it, installed improper components, and failed to repair the system.
On May 22, 1992over four-and-a-half years after McCormack delivered the coilsCentral filed a third-party complaint against McCormack alleging the coils were defective and caused all the problems, seeking contribution and/or indemnity from McCormack *762 for any damages due the orchard from Central.
In response McCormack sought summary judgment of dismissal arguing (1) to the extent Central claimed in tort for contribution it was precluded by the tort reform act and (2) to the extent Central claimed against McCormack for breach of contract it was barred by the Uniform Commercial Code (U.C.C.) four-year statute of limitations. RCW 62A.2-725. The trial court dismissed McCormack on summary judgment. Shortly thereafter Central settled with the orchard by paying it $220,000.
Central appealed the summary judgment. The Court of Appeals affirmed reasoning (1) to the extent Central's claim against McCormack was for tort liability, McCormack could not be liable to Central under RCW 4.22.040 as Central could not be lawfully held jointly and severally liable to the orchard along with McCormack;[1] and (2) to the extent Central's claim was either contractual or for indemnity, it was barred by the four-year U.C.C. statute of limitations governing contracts. Central Washington Refrigeration, Inc. v. Barbee, 81 Wash.App. 212, 220, 223-24, 913 P.2d 836 (1996). We granted review to determine whether a buyer may maintain an indemnity action against the seller based on breach of warranty, and, if so, when the applicable statute of limitations commences to run. Central Washington. Refrigeration, Inc. v. Barbee, 130 Wash.2d 1016, 928 P.2d 414 (1996).
Indemnity in its most basic sense means reimbursement (Black's Law Dictionary 769 (6th ed.1990)) and may lie when one party discharges a liability which another should rightfully have assumed. Stevens v. Security Pac. Mortgage Corp., 53 Wash.App. 507, 517, 768 P.2d 1007, review denied, 112 Wash.2d 1023 (1989) ("Indemnity requires full reimbursement and transfers liability from the one who has been compelled to pay damages to another who should bear the entire loss.").[2]
While indemnity sounds in contract and tort[3] it is a separate equitable cause of action. The variety of indemnity relevant to this case is implied contractual indemnity, also referenced to as "implied in fact" indemnity. Such arises when one party incurs a liability the other party should discharge by virtue of the nature of the relationship between the two parties. Stevens, 53 Wash. App. at 517, 768 P.2d 1007; Olch v. Pacific Press & Shear Co., 19 Wash.App. 89, 93-97, 573 P.2d 1355, review denied, 90 Wash.2d 1017 (1978); Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 350 (2d Cir.1986). The nature of the relationship between the parties gives rise to the right of implied indemnity.[4]Ryan Stevedoring *763 Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), superseded by statute as stated in Ducrepont v. Baton Rouge Marine Enters., Inc., 666 F.Supp. 882 (1987). The question here is whether the contractual relationship between buyer and seller under the U.C.C. is sufficient to give rise to an implied right of indemnity when a defect in the good causes damage to a third party user and such defect constitutes breach of seller's warranties.
A minority of courts addressing the issue under comparable facts has found the contractual relationship between buyer and seller under the U.C.C. insufficient to give rise to an indemnity action. See, e.g., Perry v. Pioneer Wholesale Supply Co., 681 P.2d 214, 219 (Utah 1984). Jurisdictions following this minority rule are Utah, Idaho, and South Dakota.[5] The minority rule would view Central's claim as nothing more than a claim for damages under a sales contract between merchants for breach of implied warranties[6] resulting in consequential damages[7] owed to a third party.[8] Use of the label "indemnity" would not alter the perception that the action still sounds in contract. The claim would be governed in whole by the U.C.C. Under the U.C.C. actions for breach of contract must be commenced within four years of date of delivery of goods regardless of when the buyer discovers the defect.[9] Because Central failed to bring its claim against McCormack within four years of delivery, its suit would be timebarred under the minority rule. The Court of Appeals chose to follow the minority rule.
Central, however, argues the minority rule errs in failing to recognize an indemnity claim here. We agree. Central points to the majority of courts addressing the issue which have ruled the contractual relationship between buyer and seller under the U.C.C. is a *764 sufficient relationship to give rise to an implied right of indemnity.[10] Jurisdictions following the majority rule include California, Maine, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New York, North Carolina, Pennsylvania, and Virginia.[11]
A clear statement of the majority rule appears in Bellevue South Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 579 N.E.2d 195, 574 N.Y.S.2d 165 (1991). In Bellevue a subcontractor installed defective floor tiles in an apartment complex and was sued by the apartment complex owner. The subcontractor eventually sued the tile manufacturer for indemnity, seeking to shift the entire liability, alleging the manufacturer breached the implied warranties. The manufacturer argued the suit was nothing more than one on the contract and thus the U.C.C. four-year statute of limitations must govern to bar the suit. The New York high court rejected the manufacturer's argument, concluding the contractual relationship and the U.C.C.'s implied warranties provided "the requisite basis for an indemnification claim." Id., 574 N.Y.S.2d at 171, 579 N.E.2d at 201.
We adopt the majority rule and hold a contractual relationship under the U.C.C., with its implied warranties, provides sufficient basis for an implied indemnity claim when the buyer incurs liability to a third party as a result of a defect in the goods which would constitute a breach of the seller's implied or express warranties. In so holding we acknowledge "[t]here is a substantial difference between an instance where a product simply fails as opposed to a situation where the product fails and causes damage to a third party." Carrier Corp. v. Detrex Corp., 4 Cal.App.4th 1522, 6 Cal. Rptr.2d 565, 569 (1992). We also understand our decision to join the majority camp comports with the equitable principles underlying indemnity.[12]
The remaining question is when the statute of limitations commences to run on the indemnity claim. Indemnity actions are distinct, separate causes of action from the underlying wrong and are governed by separate statutes of limitations.[13] It is settled *765 law that indemnity actions accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party. The statute of limitations on the indemnity action therefore begins to run at that point. Smith v. Jackson, 106 Wash.2d 298, 302, 721 P.2d 508 (1986); Earley v. Rooney, 49 Wash.2d 222, 228, 299 P.2d 209 (1956); Hanscome v. Perry, 75 Md.App. 605, 542 A.2d 421, 425 (1988); 42 C.J.S. Indemnity § 44, at 137.[14] These settled principles apply with equal force to the present case.
Thus, the statute of limitations on Central's alleged indemnity claim began to run when Central paid the orchard to settle the orchard's claims. Because Central brought suit at the same time it settled, we hold its indemnity action is not time barred.[15] Central's indemnification suit must be determined on its merits.[16] The Court of Appeals is reversed, the case is remanded for trial and Central shall recover its costs on appeal.
DURHAM, C.J., and DOLLIVER, SMITH, MADSEN and ALEXANDER, JJ., concur.
GUY, Justice (dissenting).
Article 2 of the Uniform Commercial Code (U.C.C.) establishes one general law governing all commercial sales for the purpose of providing predictability and consistency for all commercial sales transactions. In my view the majority opinion is inconsistent with this purpose. By holding contract-based indemnity claims are outside the U.C.C.'s four-year statute of repose, RCW 62A.2-725, the majority leaves commercial retailers susceptible to indemnity claims indefinitely.[1] Therefore, I dissent.
The transaction between Central and McCormack was a sale of goods. I would hold that any claim stemming from this commercial sales transaction, including one for indemnity, is governed by article 2 of the U.C.C. and its four-year statute of repose. Further, I would hold that Central's claim for indemnity was time barred since it was raised after the four-year time period had expired.
The majority is compelled by the belief that this court must follow the lead of other jurisdictions and find that when commercial buyers have paid damages to a third party due to defective products purchased from a commercial retailer, the buyer has two avenues for compensation. The jurisdictions on which the majority relies found that such commercial buyers not only have a breach of warranty claim against the commercial retailer under article 2 but also have an implied right of indemnity against the retailer founded in common law and governed by general statutes of limitations. The majority does *766 not thoroughly discuss why this policy decision is correct but instead places great importance on the fact that a "majority" of other jurisdictions follow it. Contrary to the majority's conclusion, there is no majority/minority view on whether indemnity claims are independent of the U.C.C. Rather, there exists a split of authority. Four states, South Dakota, Idaho, Utah and Georgia, find that such claims fall exclusively under the U.C.C.[2] Courts in six states, Minnesota, California, New York, Nebraska, New Hampshire and Maine, hold indemnity claims may be raised independent of the U.C.C.[3] Therefore, there exists authority from other jurisdictions to support both sides of this policy debate as to whether all contract-based claims, including those of indemnity, are bound by the U.C.C. I would hold that a decision finding contract-based indemnity claims are governed by the U.C.C. is correct because it creates a policy consistent with the purpose of the U.C.C.one of predictability and uniformity.
Although the jurisdictions cited by the majority claim fairness requires that a commercial buyer who pays out-of-pocket damages to a third party has a remedy unrestricted by a statute of repose, I believe at some point the law must recognize commercial practices and concepts, including the concept of bargained-for risk. Commercial buyers do not purchase items with the notion they are receiving an implied lifetime guarantee. They know products may not last forever. However, there does exist an implied warrantability that lasts for four years after delivery, in order to create a balance between fairness and bargained-for risk. The U.C.C. has identified this four-year period, commencing at the time of delivery, as a fair period of time for a commercial buyer to expect guaranteed warrantability and a commercial retailer to expect to be held liable.[4]
Section 2-725 was adopted to "[take] sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period." RCWA 62A.2-725 U.C.C. cmt. at 415 (Purposes). Section 2-725 provides "a time when [a merchant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when `evidence has been lost, memories have faded, and witnesses have disappeared.'" Paul J. Wilkinson, Comment, An Ind. Run Around the U.C.C.: The Use (or Abuse?) of Indemnity, 20 PEPPERDINE L. REV. 1407, 1412 (1993) (quoting Developments in the *767 Law, Statutes of Limitations, 63 HARV. L. REV. 1177, 1185 (1950)). These comments illustrate the U.C.C.'s goal to establish an across-the-board governing law for all commercial sales transactions that adequately addresses fairness and bargained-for risk. By allowing a common law remedy in a commercial sale relationship, the majority contradicts this goal. In order to remain consistent with the purpose of the U.C.C., I would hold that Central's action against McCormack is governed by article 2 and that section 2-725 applies.[5]
I would also hold that Central's action, under article 2, is barred under section 2-725. In my view, section 2-725 is a statute of repose, not a statute of limitation. A statute of limitation bars plaintiffs from bringing an already accrued claim after a specified period of time; a statute of repose terminates a right of action after a specified time, even if the injury has not yet occurred. Rice v. Dow Chem. Co., 124 Wash.2d 205, 211, 875 P.2d 1213 (1994); Morse v. City of Toppenish, 46 Wash.App. 60, 64, 729 P.2d 638 (1986).
The language of U.C.C. § 2-725 unambiguously creates a statute of repose. Because it is unambiguous, the meaning of the statute is derived from the words of the statute. State v. McDougal, 120 Wash.2d 334, 350, 841 P.2d 1232 (1992); State v. Olson, 47 Wash.App. 514, 516, 735 P.2d 1362 (1987). The statute states a claim must be made within "four years after the cause of action has accrued." RCW 62A.2-725(1). According to the statute "[a] cause of action accrues when the breach occurs," and "[a] breach of warranty occurs when tender of delivery is made..." RCW 62A.2-725(2). Therefore, all claims must be made no more than four years after delivery, whether or not the buyer is aware of the product's defect. Based on this clear language, I would hold that Central's contractual indemnity claim, based on the breach of an implied warranty, was barred when the action was filed in May 1992, since the coils were delivered more than four and a half years earlierin August 1987.
Section 2-725 actually "poses few problems: it simply bars a buyer from bringing an action for breach of warranty more than four years after tender of delivery. This straight-forward rule forces buyers to sue when evidence is most readily available and allows sellers to continue with their businesses without fear of suit after a reasonable definite period." Debra L. Goetz et al., Project, Article Two Warranties in Commercial Transactions: An Update, 72 CORNELL L. REV. 1159, 1324-29 (1987).
I would find that Central's claim is governed by U.C.C. § 2-725, a statute of repose, and was properly dismissed by the trial court. I would affirm the decision of the Court of Appeals.
JOHNSON and TALMADGE, JJ., concur.
NOTES
[1] The orchard did not sue McCormack, concluding the limitation period had run on such a claim. Central, 81 Wash.App. at 220 n. 2, 913 P.2d 836.
[2] See also McDermott v. City of New York, 50 N.Y.2d 211, 406 N.E.2d 460, 462, 428 N.Y.S.2d 643 (1980) ("Conceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that `[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' (Restatement, Restitution, § 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs.").
[3] Indemnity may arise by express contract to indemnify when one party expressly contracts to reimburse the other party for any damages the other party may incur. Stocker v. Shell Oil Co., 105 Wash.2d 546, 547, 716 P.2d 306 (1986). In tort, indemnity arises when a passive tort-feasor discharges a liability that an active tort-feasor should have paid; in such case the passive tort-feasor has an indemnity right against the active tort-feasor. Rufener v. Scott, 46 Wash.2d 240, 242, 280 P.2d 253 (1955). The Tort Reform Act expressly abolished tort indemnity in Washington between active and passive tort-feasors. RCW 4.22.040(3) (subject to narrow limitations not relevant here "indemnity between active and passive tort-feasors is abolished...."). See also Glover for Cobb v. Tacoma Gen. Hosp., 98 Wash.2d 708, 658 P.2d 1230 (1983).
[4] See 42 C.J.S. Indemnity § 31, at 121 (1991) ("A right to indemnity, while not implied in every contract or contractual relationship, may be claimed on the basis of an implied contract, which can arise either from the conduct of the parties or be implied from the nature of their relationship, whether it be a contractual or other legal relationship, and from given warranties and covenants, or be otherwise implied from unique special factors indicating the parties' intent that the party from whom indemnity is sought should be ultimately liable.") (citations omitted).
[5] Perry v. Pioneer Wholesale Supply Co., 681 P.2d 214, 219 (Utah 1984); Sheehan v. Morris Irrigation, Inc., 460 N.W.2d 413 (S.D.1990); Farmers Nat'l Bank v. Wickham Pipeline Constr., 114 Idaho 565, 759 P.2d 71 (1988).

McCormack asserts Washington, Georgia, Iowa, and Colorado also follow the minority rule, but examination of the cases cited reveals such is not the case. In Controlled Atmosphere, Inc. v. Branom Instrument Co., 50 Wash.App. 343, 348-49, 748 P.2d 686 (1988) the parties never made any implied indemnity arguments. Appellant's sole claim there was for tort-based contribution. Appellant's brief in Branom states "[i]t cannot be emphasized enough that this is a contribution action under RCW 4.22.040" based in small part on breach of warranty. Br. of Appellant at 7. PPG Indus., Inc. v. Genson, 135 Ga.App. 248, 217 S.E.2d 479 (1975) similarly lacks any discussion of indemnity. The case cited from Iowa, Kitzinger v. Wesley Lumber Co., 419 N.W.2d 739, 740-41 (Iowa App.1987), did not involve third parties and indemnity was neither an issue nor a theory that could have been raised. The only issue in Kitzinger was whether the seller had made express future warranties. The Colorado case, Persichini v. Brad Ragan, Inc., 735 P.2d 168, 172 (Colo. 1987), likewise cannot be said to follow the minority rule because of Colorado's peculiar statutory language expressly limiting any claims against sellers to either a three-year limitation or to U.C.C. § 2-725's four-year limitation "regardless of the substantive legal theory or theories upon which the action is brought." (quoting 6 Colo.Rev.Stat. § 13-80-127.5(1) (1985 Supp.)).
[6] See RCW 62A.2-314 (implied merchantability); RCW 62A.2-315 (implied warranty of fitness for particular purpose known to seller).
[7] See RCW 62A.2-715(2) (consequential damages allowed for "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know....").
[8] Two legal commentaries argue the minority rule has it right. See Paul J. Wilkinson, An Ind. Run Around the U.C.C.: The Use (or Abuse?) of Indemnity, 20 Pepp. L.Rev. 1407, 1438 (1993) (such "indemnity" actions are nothing more than actions for consequential damages resulting from breach of contract and there is no reason to treat consequential damages paid to a third party any differently from any other damages incurred as a result of a breach of contract); Thomas A. Leggette, When Can an Implied Indemnity Cause of Action be Used to End-Run a Limitations Bar?, 42 Fed'n Ins. & Corp. Couns. Q. 33, 33 (1991) (a party should not be able to end-run the strict four-year U.C.C. statute of limitations period for suing on contracts by simply denominating the action one for "indemnity").
[9] The U.C.C. statute of limitations for sales of goods is codified at RCW 62A.2-725 and provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except [] where a warranty explicitly extends to future performance....
[10] See, e.g., In re Fela Asbestos Litig., 638 F.Supp. 107, 112 (1986) (applying Virginia law) ("an `implied warranty of merchantability gives rise to an implied contract of indemnity.'") (quoting Whittle v. Timesavers Inc., 572 F.Supp. 584, 587 (W.D.Va.1983), rev'd by 749 F.2d 1103 (1984)), rev'd on other grounds sub nom. by Wingo v. Celotex Corp., 834 F.2d 375 (4th Cir.1987).
[11] Carrier Corp. v. Detrex Corp., 4 Cal.App.4th 1522, 6 Cal.Rptr.2d 565, 569 (1992), review denied (June 18, 1992); Cyr v. Michaud, 454 A.2d 1376, 1385 (Me.1983); Ameron, Inc. v. Chemische Werke Huls AG, 760 F.Supp. 1234, 1236-37 (E.D.Mich.1991) (applying Michigan law); City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874, 49 A.L.R.5th 801 (Minn. 1994); City of Clayton v. Grumman Emergency Prods., Inc., 576 F.Supp. 1122 (E.D.Mo.1983) (applying Missouri law); City of Wood River v. Geer-Melkus Constr. Co., 233 Neb. 179, 444 N.W.2d 305, 311 (1989); Jaswell Drill Corp. v. General Motors Corp., 129 N.H. 341, 529 A.2d 875, 878-79 (1987); Bellevue South Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 579 N.E.2d 195, 201, 574 N.Y.S.2d 165 (1991); Walker Mfg. Co. v. Dickerson, Inc., 619 F.2d 305, 309-10 (4th Cir. 1980) (applying North Carolina law); Thermo King Corp. v. Strick Corp., 467 F.Supp. 75, 77 (W.D.Pa.) (applying Pennsylvania law), aff'd, 609 F.2d 503 (3d Cir. 1979); In re Fela Asbestos Litig., 638 F.Supp. 107, 112 (W.D.Va.1986) (applying Virginia law), rev'd on other grounds sub nom. by Wingo v. Celotex Corp., 834 F.2d 375 (4th Cir. 1987).
[12] See, e.g., City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874 (1994) (indemnity is an equitable action and "is not based on contract or tort, although either may secondarily be involved, but on one party paying more than its fair share."); City of Clayton v. Grumman Emergency Prods., Inc., 576 F.Supp. 1122, 1127 (E.D.Mo.1983) ("A party who buys and then resells a product is not in a position to discover the latent defect within the warranty's limitation period because the product is in the hands of the consumer during that time. Only when the consumer sues the retailer does the retailer gain notice of the latent defect."). We note indemnity may not be available when equity does not so require. See Sheehan v. Morris Irr., Inc., 460 N.W.2d 413, 417 (S.D.1990); Farmers Nat'l Bank v. Wickham Pipeline Constr., 114 Idaho 565, 759 P.2d 71, 75 (1988) (equity does not require an indemnity action to be recognized where parties could have sued at law but slept on their rights). As the parties have not so requested, we refrain from assessing the particular equities in this case.
[13] McDermott v. City of New York, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460, 462-63 (1980) ("the indemnity claim is a separate substantive cause of action, independent of the underlying wrong"). Western S.S. Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal.4th 100, 876 P.2d 1062, 1070, 32 Cal.Rptr.2d 263 (1994) ("[F]or certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action."); In re Fela Asbestos Litig., 638 F.Supp. 107, 112 (W.D.Va.1986) (applying Virginia law) ("[T]he implied warranty of merchantability that generally arises upon the sale (or delivery) of goods and the implied contract of indemnity that flows from the warranty are distinctly different and are governed by different statutes of limitations."), rev'd on other grounds sub nom. by Wingo v. Celotex Corp., 834 F.2d 375 (4th Cir.1987).
[14] Central never specifies which statute of limitations in particular would apply. Central simply claims the statute of limitations should begin to run when the third party liability is incurred and not upon delivery of the goods. Accordingly, we do not address which statute of limitations would apply but note that one case has suggested the three-year statute of limitation of RCW 4.16.080(3) would apply. However under any statute this action is timely. See Universal Underwriters Ins. Co. v. Security Indus., Inc., 391 F.Supp. 326, 328 (W.D.Wash., 1974).
[15] Central, in fact, brought suit against McCormack before the third-party judgment was entered. This does not present any problem.
[16] Central also asserts McCormack fraudulently induced it to delay suit. While we disagree that McCormack did so, we need not reach the issue in light of our holding.
[1] Although a third party's claim against a commercial buyer for breach of warranty continues to be bound by the four-year time period, under the majority opinion there is no predictability as to how long a commercial retailer will be held liable for indemnity. Because accrual of an indemnity claim against a commercial retailer does not occur until a judgment is entered against a commercial buyer or when a commercial buyer pays damages to a third party, a commercial retailer cannot predict on what date an action for indemnity will accrue against it.
[2] Sheehan v. Morris Irrigation, Inc., 460 N.W.2d 413 (S.D. 1990); Farmers Nat'l Bank v. Wickham Pipeline Constr., 114 Idaho 565, 759 P.2d 71 (1988); Perry v. Pioneer Wholesale Supply Co., 681 P.2d 214 (Utah 1984); PPG Indus., Inc. v. Genson, 135 Ga.App. 248, 217 S.E.2d 479 (1975).
[3] City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872 (Minn. 1994); Carrier Corp. v. Detrex Corp., 4 Cal.App.4th 1522, 6 Cal.Rptr.2d 565 (1992); Bellevue South Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 579 N.E.2d 195, 574 N.Y.S.2d 165 (1991); City of Wood River v. Geer-Melkus Constr. Co., 233 Neb. 179, 444 N.W.2d 305 (1989); Jaswell Drill Corp. v. General Motors Corp., 129 N.H. 341, 529 A.2d 875 (1987); Cyr v. Michaud, 454 A.2d 1376 (Me. 1983). The other five courts identified by the majority are actually four federal trial courts and a Fourth Circuit Court of Appeals: Ameron, Inc. v. Chemische Werke Huls AG, 760 F.Supp. 1234 (E.D.Mich.1991); City of Clayton v. Grumman Emergency Prods., Inc., 576 F.Supp. 1122 (E.D.Mo.1983); Walker Mfg. Co. v. Dickerson, Inc., 619 F.2d 305 (4th Cir.1980) (applying N.C. law); Thermo King Corp. v. Strick Corp., 467 F.Supp. 75 (W.D.Pa.), aff'd, 609 F.2d 503 (1979); In re Fela Asbestos Litigation, 638 F.Supp. 107 (W.D.Va.1986), rev'd on other grounds sub nom. by Wingo v. Celotex Corp., 834 F.2d 375 (4th Cir.1987).
[4] Problems with the four-year statute of repose have been recognized by groups dedicated to evaluating the U.C.C. The Permanent Editorial Board for the U.C.C. recognized the limitation period may be too short, especially in breach of warranty cases, and suggests a revised limitation period of two years from knowledge of a breach, tempered by an eight-year statute establishing repose. Permanent Editorial Bd., American Law Inst. & Nat'l Conference of Comm'rs, PEB Study Group Uniform Commercial Code Article 2, pt. 7, § 3, at 54 (Preliminary Report 1990). A task force analyzing the report also recommended a limitation running two years from discovery, with no statute of repose. An Appraisal of the March 1, 1990, Preliminary Report of the Uniform Commercial Code Article 2 Study Group, 16 DEL. J. CORP. L. 981, 1249 (1991). Although these comments voice the concern that some claims are not discovered before an individual's right to bring an action expires, the time period has not been revised.
[5] The majority assumes, without evaluative analysis, that a cause of action for implied contractual indemnity exists under Washington law. In 1981 the Washington Legislature expressly abolished implied indemnity in the tort context when it enacted the product liability and tort reform act. Laws of 1981, ch. 27, § 12 (codified at RCW 4.22.040(3)). This policy decision of the Legislature was applied in the context of implied contractual indemnity in Lopez v. Johns Manville, 649 F.Supp. 149 (W.D.Wash. 1986), aff'd, 858 F.2d 712 (1988), cert. denied sub nom. Eagle-Picher Indus., Inc. v. United States, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989), but is ignored by the majority in the present case. In effect, the majority writes a contract for the commercial parties that the parties themselves did not agree to. Honey v. Davis, 131 Wash.2d 212, 225, 930 P.2d 908, 937 P.2d 1052 (1997) (Talmadge, J., concurring). The commercial parties in the present case had not entered into a written indemnification agreement and there is no evidence that these commercial parties intended to provide for indemnification. The majority holds that the mere existence of a contractual relationship between a buyer and seller under the Uniform Commercial Code is sufficient to give rise to an implied right of indemnity in this state.